Association, and the Management Council. Mr. Zashin, are you on? Yes, Your Honor. Thank you. Would you like me to begin now, sir? Yes, please. Thank you, Your Honor. May it please the Court, I am Steve Zashin from the law firm of Zashin & Rich, and I represent the appellant in this matter, Lane Johnson. I'd like to reserve two minutes for my rebuttal. That's fine. If this Court affirms the District Court's summary judgment ruling, then a union member would have no meaningful remedy when his union withholds a collectively bargained agreement establishing the member's employment rights. Despite the fact that Mr. Johnson is a member of the NFLPA, he is an outsider here. The NFLPA has never provided him with a complete copy of the at-issue collective bargaining agreement, and he never had an arbitration that comported with the express terms of the collective bargaining agreement. Concerning his LMRDA claim, it's undisputed that Johnson requested a complete copy of the collective bargaining agreement at issue, the NFL's policy on performance-enhancing substances, 2015. Section 104 of the LMRDA required the NFLPA to give it to him. Johnson requested that CBA prior to his 2016 discipline arbitration hearing. The NFLPA admits that it did not provide that information to him, even assuming that version was complete, until October 16, 2018, more than two years later. And you got some additional things in October of 2018, correct? That is correct, Your Honor. The additional things that you got, would they have made any difference to the outcome of the arbitration? Absolutely, Your Honor. And I will talk about that further, but to your point, one of the items that they provided was a supposed amendment to the CFT requirement. And if this court looks at the pre-hearing statement, which we submitted to this court at Appendix A-208, one of the issues that Lane Johnson raised was the fact that his test was not certified by the certified forensic toxicologist as identified in the policy itself. And we will talk about that a little bit further. Does he even contest that it was a positive test? I thought he acknowledged that the test was positive. He acknowledged that he took the substance. His defense really was it was negligent. No, Your Honor. That's not correct. Mr. Johnson actually contested that there was a positive test, and that term is a defined term as set forth in the policy. The NFL Management Council had the burden to establish a positive test. And in this particular proceeding, it is our contention that there was no positive test as that term is defined under the policy. And the court can look at his pre-hearing statement, which, again, is set forth at A-208. In this particular case, Your Honor, and I want to go back to his DFR and breach of contract case as well, the hybrid 301 claim. This case fits squarely within Brady 2, Judge Chinn, that you presided over in two material respects. I wasn't presiding. I was the junior judge. Yes, I'm sorry, Your Honor. But here, Brady stands for the proposition that you get the arbitration that you bargained for. Here, Lane Johnson didn't get anything close because of the secret amendments, side deals, and oral modifications about the arbitration process never disclosed to him. And second, the majority in Brady chided the NFLPA for changing its position throughout the litigation. In this case, the NFLPA has a vacillating story about why only two arbitrators existed at the time of Lane Johnson's arbitration hearing when the contract specifically and expressly required a minimum of three. Counsel, could you address what standard of review you're asking us to apply in looking at the denial of your motion to vacate the arbitration award? My understanding is, based on Brady and our subsequent discussions, that we really have a very limited nature of review. It's extremely deferential in this. Your Honor, it is a de novo review, but the facts must demonstrate a clear error. But in this case, the process was so broken that there was no fair hearing. And part of that had to do with the seating of the arbitrator, which is, in my view, one of the most important pieces to the arbitration itself, that if the arbitrators are not properly seated, then you can't actually have a fair arbitration process. Counsel, I'd like to separate two different things. One, what is it, if there is anything that you have not gotten that is relevant and that you think you should get under the MRA? Yes, Your Honor. Thank you. The second thing is, what is it about what was not given to you that made the arbitration so flawed that we have a right to overturn it? I think these are separate things, and you've been arguing both. And I'd like to just get in my head which it is you're telling us.  Well, first of all, Mr. Johnson has two separate claims. One is the LMRDA claim, which is separate and distinct from his hybrid 301 claim. But to answer your question, there are four basic things that Mr. Johnson was never provided that impact directly the terms of his arbitration and likewise also impact his LMRDA claim. And the first is the amendment relative to the arbitrators. The policy specifically required three to five unaffiliated arbitrators, and that prevents arbitrator bias and control. At the time of Mr. Johnson's arbitration, it's undisputed that only two existed. The NFLPA explained to the Northern District of Ohio judge that, quote, one or two years ago, I'm not exactly sure when, the parties by mutual consent, the parties determined that two arbitrators were sufficient. The parties concluded that it did not make sense to employ a third arbitrator. But that's not all. In a brief to the Northern District of Ohio, the NFLPA said the following. The parties to the CBA, the NFL, and the NFLPA mutually consented to modify their agreement and not to appoint a third arbitrator. But now the NFLPA claims that it just delayed in naming the third arbitrator, and this is exactly what the majority chided the NFLPA for in Brady. But there's more evidence, and I would urge this court, if you're going to look at one thing, I would urge you to look at page A220. Counsel, counsel. Yes, I'm sorry. I think Judge Carney was trying to ask you a question. I just wanted to interject a brief question. Haven't they, in fact, appointed a third arbitrator? Yes, but that was after the arbitration in question, Your Honor, and that was after they were sued in connection with the Mike Pinnell versus the NFLPA case – NFL case. So to the extent there was an agreement, it was a temporary agreement, and they've since appointed a third. I still have a problem understanding how that renders the arbitration that your client underwent flawed. Well, Your Honor, seating of arbitrators is an essential portion of a member's rights, and the parties agreed for a minimum of three unaffiliated arbitrators. At the time of Mr. Johnson's arbitration, there were only two. Counsel, counsel, did the arbitrator's decision that affected your client come ultimately from a panel of three arbitrators? Under this system, Your Honor, there is only a one arbitrator. Answer my question, please. I'm sorry, Your Honor. Did it come? No. It did not come from a panel of three arbitrators? No. You have one minute. Thank you. I'm looking – back to – because I think it's important. Back to my question from a few minutes ago. I'm looking at an excerpt from the hearing testimony, and this is your client testifying. How many times did you take this substance? I took it twice. And you got it from your buddies? Yes. And this is when you ended up testing positive? Yes. So it seems to me he admitted that he took the substance, and then he tested positive. Your Honor, there is – And if that's the case, it's hard for me to see a basis for concluding that the arbitrator was off dispensing his own individual justice when there's an admission. Your Honor, I would point out two things, which is the positive test is a defined term set forth in the policy, and that was the burden of the Management Council to prove, and they couldn't prove it by virtue of the flawed procedures that were employed to test the actual substance. And to answer the earlier question by Judge Carney, there were missing protocols and procedures by which Mr. Johnson had the right under the policy to challenge, but he was never provided with those. In addition, the policy required for a Chief Forensic Toxicologist to certify the results, but in this particular case that did not occur because the Chief Forensic Toxicologist was no longer there under the program. And because I'm running out of time, I just want to point out one last thing, which is – I'm sorry? To follow up on Judge Chin's question, is it your position that the results were incorrect? Yes, Your Honor, because the protocols that we know of were not followed. And therefore, you can't assume that the positive test even existed at all in connection with this case. And what about what Judge Chin just read to you in terms of testimony, where he – your client acknowledged having taken a substance, although – albeit negligently, he said, that gave rise to such a result? Your Honor, that may be true, but there's no contention that the substance would have tested positive if, in fact, they had followed the collection procedures and the certified forensic toxicologist as it relates to the policy itself. And I would point out that his claims in this case surround as well his claim under the LMRDA, which has no bearing on the arbitration itself, but just his request for the information under the policy. And therefore – You're out of time. You have two minutes for rebuttal, but let's hear from the other side. Thank you, Your Honor. Good morning, Your Honors. This is David Greenspan for the NFL Players Association. May it please the Court, as Mr. Johnson's counsel's presentation makes clear, he persisted in his effort to use the narrow scope of the Section 104 LMRDA claim as the Trojan horse to improperly and collaterally attack the arbitration award and to argue that the NFL breached its duty of fair representation while sidestepping the demanding pleading standards that such a claim requires. The arguments, Your Honors, have heard and have read about the NFLPA supposedly improperly withholding collection procedures and reasonable cause testing modification and an agreement on the chief forensic toxicologist all rest on Mr. Johnson interpreting the policy in ways that the arbitrator has rejected. The arguments, Your Honors, have just heard about a supposedly secret agreement to reduce the arbitrator pool, and it's not a three-arbitrator panel, but a pool of available arbitrators one day. Mr. Greenspan, does the Players Association acknowledge that there were some documents that were produced late, that is, that they weren't produced until during the litigation relating to the policy? Well, it's undisputed, Your Honor, that we made a document production in October of 2018 in a declaration that Mr. Johnson submitted in summary judgment. Some of those documents arguably should have been produced when Mr. Johnson first made his request, right? So, Your Honor, we do not believe two of the documents Mr. Johnson acknowledged he already had before we produced them to him. The opposing parties make a claim that some of these documents that he didn't get until after go to the validity of the arbitration panel itself. For instance, they say that two arbitrators decided when originally, according to the documents he had, there should be three, and there might be documents that explain that, but he didn't have that. Is it correct that only two rather than three arbitrators decided, and is it correct that the documents which would have justified that change were not available to Mr. Johnson until after the arbitration, or is that not correct? So, Your Honor, it's correct that only one arbitrator decided Mr. Johnson's arbitration. The policy only provides for one arbitrator to preside over an arbitration. The issue is over the available pool of arbitrators. The policy said that there would be three to five available arbitrators. At the time of Mr. Johnson's arbitration, there were two. The reason there is no document modifying the pool that was denied to Mr. Johnson is because it doesn't exist. But to go back to the first question Your Honor asked, Mr. Johnson does not contend that a single document that the NFLPA produced in October of 2018 would have made a difference at his arbitration because nowhere in his arguments, nowhere in his papers does he say one word about any of those documents. He does not argue that the screenshots that we produced that Mr. Johnson had already seen, by the way, or that the agreement to collect medical record authorizations from NFL players would have made a difference at the arbitration. There is nothing about that in his papers at all. All of the arguments that Mr. Johnson made about documents that supposedly would have helped him at the arbitration either do not exist, were not collectively bargained, and therefore are not subject to the LMRDA, or were turned over to Mr. Johnson. What I would say, Your Honors, is that the essential premise of Mr. Johnson's arguments under Section 104 of the LMRDA and Rule 56D of the Federal Rules of Civil Procedure is that no matter what a union indisputably and in good faith tries to do to respond to a member's request for a particularly collectively bargained document, so long as the member contends that his union is lying, then the member's claim must carry on, and the member is entitled to the loss of the document. I have a legal question. You argue that damages are not available under Section 104, and therefore production of the document moots out the claim as a district court held. Isn't there authority for an amendment when an attorney sees for a violation of 104, and I believe there's some authority for punitive damages even? Why weren't those potentially claims here for the 104 violation, assuming there was one? Well, two issues, Judge Schiff. There are cases under Section 101 of the LMRDA where punitive damages have been entertained and attorney's fees have been awarded. There are no such cases under Section 104. Having said that, the Supreme Court in the Hall case and Second Circuit cases made clear that the award of attorney's fees would reside – the decision would reside soundly within the discretion of the district court, and here the district court determined that given the absence of any causal nexus… Mr. Greenspan, your connection is not very good. Are you on a speakerphone? It's just not… Try to speak closer to the phone. Is that better, Your Honor? That's better. So, in terms of… I think Judge Calabresi was asking a question. Yeah, counsel. I'd like to know if there's any authority from our court that only production of documents is the remedy under LMRDA, and that if there is no such authority, whether the district court in this case specifically looked to whether damages and attorney's fees might be justified or assumed that the only relief was the production of documents? Your Honor, all I can say is in this circuit, there are now three district courts which uniformly have concluded that when a Section 104… District courts are fine. I'm talking about courts of appeal. I'm talking about whether we have precedent on that question, whether that is an open question in our court, and if it is an open question, what the decision of this district court was, i.e., was it nothing but documents is available, or whether it's considered whether in the current and the existing circumstances, there were no damages, no punitive damages, no attorney's fees, as a matter of context rather than requirement? Your Honor, there is no… You have one minute. You have one minute. Go ahead. Your Honor, there is no Second Circuit decision that precludes damages under Section 104 of the LMRDA. There is no district court decision anywhere that we have found in any circuit that has ever awarded damages under Section 104 of the LMRDA. Were the district court to entertain, in theory, the availability of punitive damages, it would have required egregious willful conduct by the NFLPA, which the district court determined was implausible in rejecting Mr. Johnson's duty of fair representation claim, which would have required Mr. Johnson to plausibly allege that the union acted in a way that was arbitrary or in bad faith or discriminatory, and the district court rejected those arguments as completely implausible on this record where there was no causal connection between the alleged deprival of documents and the outcome in the arbitration, which is the source of all of the injuries that Mr. Johnson alleges. All right. Thank you. We'll hear from your colleague. Good morning, Your Honor. Daniel Nash on behalf of the National Football League and the National Football League Management Council. I will just briefly address, I think, the issue that is dispositive on appellant's Section 301 breach of contract claim against the NFL and why the court both correctly denied the motion to vacate under the applicable Brady standard and dismissed the Section 301 breach of contract claim against the NFL. I would note at the outset that in his briefing, appellant does not even acknowledge that the Brady standard applies and makes no effort to explain how this award could possibly be vacated under that exceedingly narrow and highly deferential standard. The only grounds on appeal, he made a number of arguments about vacater in the district court, but on appeal, his sole argument is that the award violated so-called fundamental fairness. I think as this court knows, however, and as explained in Brady, the Second Circuit has never held that the requirement of fundamental fairness applies to arbitrations under the LMRA. But even if it did, let me just quickly address the questions that the court had and the arguments that counsel made about the so-called documents that he claims he was denied. Both the decisions of the arbitrator and the district court make clear that he had a full and fair opportunity to present his appeal, including by seeking those very same documents through the policies discovery procedures. In fact, his counsel did so aggressively. He served 47 discovery requests, and that's in the district court record at DE 110 Exhibit 13. The arbitrator issued a written decision on those requests, ruling that he was entitled to some, but not all of them. You have a minute, by the way, or even less than a minute, but go ahead. But to that point, Your Honor, essentially what he's arguing is that the discovery rulings of the arbitrator were wrong, and under the Brady standard, those rulings were entitled to deference. And really, the long and the short of it is no matter what the Players Association provided him, he was still able to seek discovery. He was able to make procedural arguments, and he was able to vindicate his CBA dispute resolution rights. In particular, the so-called CFT certification that he claims he was denied, that was specifically ruled upon by the arbitrator, who ruled that that made no difference to the validity of his test. Essentially what he's arguing, and he kept saying that the Management Council couldn't carry its burden of showing a positive test under the policy. But the arbitrator ruled otherwise, and he did so in a ruling that was plainly grounded in the policy. The same is true about the so-called collection procedures that he talks about. Those were adequately discussed in the arbitrator's both discovery rulings and his reasoned awards. They can't be disturbed here. So finally, because there's no basis to vacate his award, there's no basis to even suggest, particularly in light of the players' admissions that he took the prohibited substances, there's no basis to vacate the arbitrator's ultimate decision on his appeal of his discipline. And because of that, there's no basis for him to proceed with a Section 301 breach of contract claim against the NFL. Thank you. Thank you. We'll hear Mr. Zashin's rebuttal.  Thank you, Your Honor. As it relates to Mr. Greenspan's comments, he is entirely factually wrong. And I would tell the court that all it needs to do is look at the pre-hearing letter that was submitted to Arbitrator Carter, which is in the record at A208 through A214, and specifically at page A212. Two years later, after the arbitration, and that specifically relates to the CFT certification, and in fact, Mr. Johnson specifically argues that his test was not properly evaluated by the neutral certified forensic toxicologist. Two years later, Mr. Greenspan provided a letter, which if you look at was in the record at A278 through A381, and specifically look at A351. This is the letter that they claimed amended the 2015 policy that they suggested to the arbitrator existed, but never provided that to Mr. Johnson during the course of his arbitration. That had everything to do with his underlying case, and the withholding of that information was central to Mr. Johnson's claims as set forth in the pre-hearing letter provided to Arbitrator Carter. So to answer your question, this is specifically at the heart of the LMRDA claim that exists in this case. Mr. Johnson suffered extreme damage because his own union failed to provide him with a letter that supposedly amended the 2015 policy. I would also point out to the question concerning damages, there are a multitude... One minute. You have one minute. But I'd also ask the court to look at Berg v. Watson, Hall v. Cole, and Quinn v. DiGiuliani, which has been cited with approval in Hodges v. Virgin Atlantic Airlines. All of those cases find that when the union withholds information from a union member, they're entitled to the full panoply of damages, including compensatory damages, punitive damages, and attorney's fees. Are these cases under the section of the law that we're talking about here, or are they involving other possible union violations? Your Honor, they all fall under Title I, which is the section of the LMRDA and the civil enforcement scheme brought by Mr. Johnson under Section 102 of the LMRDA. Are any of these 104 cases? They are not, Your Honor. These are all basically 101 cases, but there's no distinction made relative to Section 104. And again, I would just point out the issue that I mentioned at the beginning, which is if this court adopts the decision by the district court, it would basically allow a union to withhold vital information from a union member without any penalty whatsoever. And that can't be the law. That was definitely not the purpose set forth by the LMRDA. And with that, I will close. Thank you. Thank you to all. Thanks to all of you. The court will reserve decision.